IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| T.P. JOHNSON HOLDINGS, LLC, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO. 3:09-CV-305-WKW [WO] ) |
| POARCH BAND OF CREEK INDIANS, *et al.*, | ) ) ) ) |
| Defendants. | ) |

**<u>ORDER</u>**

Plaintiffs (collectively the "Johnson Land Owners") own property in Tallapoosa County, Alabama, adjacent to a casino operated by Defendants, the Poarch Band of Creek Indians ("Poarch Band" or "Tribe") and two corporations wholly owned by the Tribe. In their amended complaint (Doc. # 5), the Johnson Land Owners allege they were injured when a portion of a casino parking deck intruded onto their land (Doc. # 5, ¶ 10). The Poarch Band has moved to dismiss the case for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted (Docs. # 11, 12).  *See* Fed. R. Civ. P. 12(b)(1) & (b)(6).[1]  Because there is no basis for federal subject matter jurisdiction, the motion to dismiss is due to be GRANTED.

---

[1] Motions to dismiss pursuant to Rule 12(b)(1) may be asserted on either facial or factual grounds; here, as no factual evidence has been introduced, the court conducts its review "based solely on the allegations in the complaint." *Carmichael v. Kellogg, Brown & Root Services, Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). In doing so, the allegations in the complaint are accepted as true. *Id.*

Though the Johnson Land Owners initially argued that diversity jurisdiction existed in this case (Doc. # 5, ¶¶ 3, 4), they subsequently conceded a lack of diversity jurisdiction and instead premised jurisdiction on the general federal question jurisdiction statute and a more specialized statute relating to suits by Indian tribes (Doc. # 15, ¶ 2). 28 U.S.C. §§ 1331, 1362. Section 1331 provides for federal jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." § 1331. "Under the longstanding well-pleaded complaint rule, however, a suit 'arises under' federal law 'only when the plaintiff's statement of his own cause of action shows that it is based upon federal law.'" *Vaden v. Discover Bank*, 129 S. Ct. 1262, 1272 (2009) (quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)) (internal punctuation omitted). "Federal jurisdiction cannot be predicated on an actual or anticipated defense." *Id.*; *see also Jones v. LMR Int'l, Inc.*, 457 F.3d 1174, 1178 (11th Cir. 2006).

Section 1362 is a less commonly employed jurisdictional provision, but its wording is not dissimilar: it grants the district courts jurisdiction over a civil action "brought by any Indian tribe or band . . . wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1362. This provision "provides federal question jurisdiction for Indian tribes." *Osceola v. Fla. Dep't of Revenue*, 893 F.2d 1231, 1232 (11th Cir. 1990).

In this case, the amended complaint makes no reference to federal law; it is entirely premised on state-law claims to quiet title and for ejectment and trespass (Doc. # 5, ¶¶ 11-

27). In the ordinary case, it would thus be clear that there was no basis for federal question jurisdiction. The Johnson Land Owners claim, however, that jurisdiction nonetheless exists. They point to a Supreme Court case adjudicating Indian land claims and stating that "[w]ith the adoption of the Constitution, Indian relations became the exclusive province of federal law." *Oneida County, N.Y. v. Oneida Nation of N.Y. State*, 470 U.S. 226, 234 (1985) (*Oneida County II*). In citing these passages, the Johnson Land Owners urge the court to adopt a broad rule that any case that has an Indian tribe as a party and concerns a land dispute is subject to federal jurisdiction. (Doc. # 5, ¶ 3). The Johnson Land Owners also argue that, if the Tribe's asserted sovereign immunity defense is valid, Congress has "abrogated" the Fifth Amendment with respect to their rights, thus creating a federal question (Doc. # 5, ¶ 4). Finally, they assert that Section 1362, combined with an 1866 treaty to which the Creek Indians were party, indicate that there is federal jurisdiction in this case (Doc. # 5, ¶ 5). The arguments will be addressed in turn.

The Johnson Land Owners' first argument misreads the cases upon which it relies. In the first *Oneida County* case, the Court determined that there was federal subject matter jurisdiction over a claim brought *by* an Indian tribe contending that a 1795 transfer of tribal land to local governments was void because a statute required federal approval of such transfers. *Oneida Indian Nation of N.Y. State v. Oneida County, N.Y.*, 414 U.S. 661, 667 (1974) (*Oneida County I*). The Court discussed the historical roots of the tribal "right of occupancy" or "Indian title" to land occupied by Indian tribes at the time of European

settlement, and noted that it was clear that, with the adoption of the Constitution, such rights to lands historically occupied by Indians were validly terminable only by the federal government. *Id*. at 667-69. Since "termination [of Indian title] was exclusively the province of federal law," and the Oneida Tribe's complaint was that its right to certain lands had been terminated in violation of federal law, the Court found that federal question jurisdiction existed in that case. *Id*. at 670.

The differences between *Oneida County I* and this case are apparent. In the former, an Indian tribe claimed a historical right to land under federal law via the "Indian title" or "right to occupancy" doctrine. Here, the Johnson Land Owners, who are not an Indian tribe, claim the infringement of a real estate right under Alabama law.

As an initial matter, it is not clear that the potential tribal land interest here is of the sort the Supreme Court was discussing in *Oneida County I*, the well-pleaded complaint rule aside. The Johnson Land Owners admit in their complaint that the Poarch Band "do[es] not claim an ownership interest" in the disputed property (Doc. # 5*, ¶¶ 14, 19), but claim rather that the Tribe seeks to obtain the property via "prescription or adverse possession" (Doc. # 15, ¶ 3). Thus, any right to the land the Poarch Band possibly obtained would arise under the contemporary law of Alabama, not the federal-law doctrines governing divestment of land held by Indian tribes since before the arrival of Europeans.

Even if the foregoing were incorrect, and any conceivable claim to land, however recent, made by an Indian tribe arises under federal law, the Johnson Land Owners' suit

would still fail on the basis of the well-pleaded complaint doctrine. The *Oneida County I* Court took pains to point out that, "[n]or . . . do we disturb the well-pleaded complaint rule," because "[h]ere, the right to possession itself is claimed to arise under federal law in the first instance." 414 U.S. at 676. That is simply not the case here – at most, a *defense* to the claim for land would arise under federal law when the Poarch Band asserted some federal-law right to the land. Such cases are precisely what the well-pleaded complaint rule forbids in federal court.

The Johnson Land Owners' subsequent arguments require less discussion. Their claim (Doc. # 15, ¶ 4) that the Tribe's anticipated sovereign immunity defense would, if allowed, cause a violation of the Fifth Amendment need not be examined on its merits, because, once again, it is premised on an anticipated defense to the lawsuit, which the well-pleaded complaint rule prohibits as a jurisdictional basis.

Nor are arguments concerning Section 1362 persuasive (Doc. # 15, ¶ 5). By its own terms, that provision applies to suits brought "by" Indian tribes. If anything, this indicates that Congress specifically chose not to extend federal jurisdiction similarly to suits against Indian tribes, and the Johnson Land Owners point to no authority construing the statute in their favor.

Finally, the Johnson Land Owners cite no authority for the proposition that they may seek to privately enforce an 1866 treaty between the United States and the Creek Indians

promising "perpetual peace and friendship" (Doc. # 15, ¶ 5).[2]  "It is well-settled that [t]he very great majority of Indian treaties create tribal, not individual, rights." *Dry v. United States*, 235 F.3d 1249, 1256 (10th Cir. 2000); *see also Mora v. New York*, 524 F.3d 183, 201 n.25 (2d Cir. 2008) (collecting cases concerning the private enforceability of treaties generally).

For the foregoing reasons, it is ORDERED that the Poarch Band's motion to dismiss for lack of subject matter jurisdiction (Doc. # 11) is GRANTED.

A final judgment will be entered separately.

DONE this 17th day of September, 2009.

                                          /s/  W.  Keith Watkins
                                       UNITED STATES DISTRICT JUDGE

---

[2] Since the Johnson Land Owners fail to offer a citation to or a copy of this treaty, the court accepts their word, for purposes of this discussion, that it exists, contains this phrase, and that the current Poarch Band would properly be considered a party to it.